**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MICHAEL STAMBOLY,**

**Plaintiff,**

**v.**

**6:17-CV-552**
**(FJS/TWD)**

**THE BOARD OF EDUCATION OF THE**
**ROME CITY SCHOOL DISTRICT; PETER**
**BLAKE, individually and as Superintendent**
**of Schools; and FRANK CONESTABILE,**
**individually and as the Director of Human**
**Resources,**

**Defendant.**

---

**APPEARANCES**                                    **OF COUNSEL**

**GATTUSO & CIOTOLI, PLLC**                        **STEPHEN CIOTOLI, ESQ.**
The White House
7030 East Genesee Street
Fayetteville, New York 13066
Attorneys for Plaintiff

**FERRARA FIORENZA P.C.**                          **ALLISON L. MARLEY, ESQ.**
5010 Campuswood Drive                              **CHARLES E. SYMONS, ESQ.**
East Syracuse, New York 13057
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Pending before the Court is Defendants' motion for summary judgment pursuant to Rule 56

of the Federal Rules of Civil Procedure. *See generally* Dkt. No. 21.

**II. BACKGROUND**

Plaintiff has been an employee of the Rome City School District (the "District") since 2003, initially serving as Principal of Strough Middle School before becoming the District's Athletic Director in 2006. *See* Dkt. No. 1, Complaint at ¶ 6. At the time of the alleged events, Defendant Blake was the District's Superintendent, and Defendant Conestabile was the District's Human Resource Director. *See id.* at ¶ 5.

According to Plaintiff, prior to the start of the 2016-2017 school year, the District's former High School Assistant Principal, Riccardo A. Ripa, visited Plaintiff regarding his daughter's upcoming class schedule. *See id.* at ¶¶ 11-12. At the time, Plaintiff's daughter was a tenth-grade student at the District's high school. *See id.* at ¶ 12. During their conversation, Mr. Ripa recommended that Plaintiff's daughter take chemistry with a different teacher than the one to whom she was originally assigned. *See id.* Plaintiff alleges that, at the time, he did not believe that Mr. Ripa was serious about changing his daughter's class schedule; but, unbeknownst to Plaintiff, Mr. Ripa, using his own login credentials, accessed Plaintiff's computer and changed Plaintiff's daughter's schedule. *See* Complaint at ¶¶ 13-15.

On September 16, 2016, Plaintiff was called into a meeting with Defendant Blake at which he was made aware of the schedule change. *See id.* at ¶ 15. Plaintiff did not deny that Mr. Ripa made the schedule change but insisted that he personally had no intention of making the change and thought Mr. Ripa was joking when they discussed it. *See id.* In any event, Plaintiff did not think this was a serious concern considering how often schedule changes were made for students and no legitimate harm had occurred. *See id.* Moreover, Plaintiff alleges that Mr. Ripa admitted to District officials that he was the one who accessed Plaintiff's computer and made the schedule change without Plaintiff's direction or assistance. *See id.* at ¶ 16.

On September 16, 2016, Defendant Blake notified Plaintiff in writing that he was "plac[ing] [him] on administrative leave, with pay, until further notice." *See* Dkt. No. 21-5, September 16, 2016 Letter from Defendant Blake to Plaintiff, at 1; Dkt. No. 21-8, Defendants' Statement of Material Facts, at ¶ 16 (citing Exhibit "A" to Symons Dec., Complaint at ¶ 20; Blake Aff. at ¶ 15 and Exhibit "A").[1] In his letter, Defendant Blake also directed Plaintiff "not to enter any of the District's buildings, grounds, vehicles or events, except with [Defendant Blake's] expressed [sic] permission . . . [and that his] permission [would] not be withheld unreasonably." *See* Dkt. No. 21-5 at 1. Plaintiff also alleges that the District filed "a Part 83 complaint against [him with] the New York State Education Department ("SED") alleging that a question of moral character had been raised against [him.]" *See* Complaint at ¶ 21.

Plaintiff asserts that Defendants also threatened him with New York Education Law § 3020-a charges and filed a complaint against him with the City of Rome police, which accused him of felony-level computer trespass. *See id.* at ¶¶ 22, 27. Consequently, Plaintiff was arrested on September 22, 2016. *See id.* at ¶ 27. According to Plaintiff, on February 3, 2017, the Hon. James Betro of the Rome City Court dismissed Plaintiff's charges, stating that "Plaintiff had paid a significant price both financially and personally that went well-beyond what would have been reasonable under these circumstances considering the complete lack of evidence against Plaintiff,

---

[1] In his complaint, Plaintiff asserted that he was "suspended" for his involvement in accessing and altering confidential student records without authority. *See* Complaint at ¶ 18. In addition, in response to paragraph 16 of Defendants' Statement of Material Facts, Plaintiff stated as follows: "Admit only to the extent that Plaintiff received a letter from Superintendent Blake indicating that he was being suspended. The letter of suspension speaks for itself." *See* Dkt. No. 25-14, Plaintiff's Statement of Material Facts, at ¶ 16. Plaintiff is correct; Defendant Blake's letter does speak for itself and nowhere in that letter does it indicate that Plaintiff has been "suspended." To the contrary, the letter clearly advised Plaintiff that Defendant Blake was placing him on administrative leave with pay.

the insignificant nature of the underlying actions at issue, and the fact that there was no harm caused." *See id.* at ¶ 31.

Plaintiff was reinstated to his job at the District as of February 14, 2017. *See* Complaint at ¶ 33. Plaintiff asserts that, after he returned to work, he was called into a meeting on February 27, 2017, with Defendant Blake and Defendant Conestabile where they falsely accused him of harassing another employee in the athletic department. *See id.* at ¶ 34.

Finally, Plaintiff contends that, prior to the events that underlie his claims, he had a clean and exemplary record. *See* Complaint at ¶ 7. Plaintiff further argues that, despite his exemplary record, Defendants have been targeting him and orchestrating ways to remove him from his position for years. *See id.* at ¶ 8. In addition, Plaintiff contends that Defendants have defamed and vilified him through numerous public statements and newspaper articles that they used to incriminate him and tarnish his reputation. *See id.* at ¶¶ 28-30. Plaintiff claims that, as a result of Defendants' actions, he has "suffered enormous emotional, psychological, physical, and social distress and harm," *see id.* at ¶ 30, and is currently under medical care and taking prescription medication for Post Traumatic Stress Disorder and severe depression, *see id.* at ¶ 35.

Based on these allegations, Plaintiff asserts the following two causes of action pursuant to 42 U.S.C. § 1983 against Defendants:

> (1) Deprivation of his property interest in his tenured position at the District without due process of law as provided under N.Y. Educ. Law § 3020-a
>
> (2) Deprivation of his protected liberty interest in his good name, reputation and standing in the community, as well as his protected employment, career and ability to earn a living without due process of law by suspending him from his position and publicly claiming that

he committed a felony level crime[2]

## III. DISCUSSION

### A.    Legal standards governing Defendants' motion for summary judgment

Under Rule 56 of the Federal Rules of Civil Procedure, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quotation omitted).  When deciding a summary judgment motion, a court must resolve any ambiguities and draw all reasonable inferences in a light most favorable to the nonmoving party.  *See Anderson*, 477 U.S. at 255 (citation omitted).

Furthermore, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).  Plaintiff asserts that the individual Defendants were acting under color of state law, and Defendants do not challenge this assertion.

### B.    Deprivation of Plaintiff's property interest in his tenured employment

A § 1983 deprivation of property analysis proceeds in two steps.  *See Narumanchi v. Bd. of Trustees*, 850 F.2d 70, 72 (2d Cir. 1988).  First, courts must determine whether the plaintiff has a Constitutionally protected property interest.  *See id.* (citing *Board of Regents v. Roth*, 408 U.S. 564,

---

[2] In addition to his § 1983 claims, Plaintiff asserted two state-law causes of action against Defendants for (1) defamation *per se* and (2) injurious falsehoods.  Defendants did not move for summary judgment with regard to Plaintiff's state-law claims.

92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).  Second, "*[i]f* a protected interest is identified, [the] court

must then consider whether the government deprived the plaintiff of that interest without due

process.  The second step of the analysis thus asks what process was due to the plaintiff, and

inquires whether that constitutional minimum was provided in the case under review."  *Id.* (citing

*Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

It is well-established that "tenured public school teachers . . . have constitutionally protected

property interests in their continued employment and in their right to a predismissal hearing under

[New York] Education Law § 3020."  *Winston v. New York*, 759 F.2d 242, 245 (2d Cir. 1985)

(citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972)).

However, a plaintiff who is suspended with pay cannot sustain a § 1983 claim for a deprivation of

his property interest in his continued employment because he has not been deprived of such.  *See*

*Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 453 (S.D.N.Y. 2010) (quotation omitted); *see*

*also, e.g., O'Connor v. Pierson*, 426 F.3d 187, 199 (2d Cir. 2005) (noting that "no court has held

that an employee on fully paid leave has been deprived of a property right merely by virtue of being

relieved of his job duties"); *Vosburgh v. Burnt Hills - Balston Lake Cent. Sch. Dist.*, No. 1:18-CV-

1003 (MAD/CFH), 2019 WL 315054, *7 (N.D.N.Y. Jan. 24, 2019) (noting that "[c]ourts in this

Circuit have universally held that the suspension of an employee with pay does not deprive that

employee of a legal right" "because employees do not have a property right in doing their job"

(citations omitted)).  Nor does Plaintiff have a constitutionally protected property or liberty interest

in the unrestricted access to District property where he worked and his daughter attended school.

*Cf. Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719, 724 (2d Cir. 1994)

(holding that a Board of Education member "did not have an unrestricted right to enter the school

classrooms or hallways during school hours").

Lastly, although Plaintiff alleges that he was threatened and told that he should resign to avoid charges, he was, in fact, never terminated or suspended. Rather, he was placed on administrative leave with full benefits until the criminal charges against him were resolved and then reinstated to his position on February 14, 2017. Plaintiff has remained in that position since that time. Accordingly, for all of the above-stated reasons, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's § 1983 due process claim based on a deprivation of a property interest in his continued employment.

## C.     Deprivation of Plaintiff's liberty interest in his good name and reputation

"A § 1983 liberty interest claim . . . commonly referred to as a 'stigma plus' claim . . . requires a plaintiff to allege (1) the utterance of a statement about [him] that is injurious to [his] reputation, 'that is capable of being proved false, and that he . . . claims is false,' and (2) 'some tangible and material state-imposed burden . . . in addition to the stigmatizing statement.'" *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2015) (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds*, *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003)). Furthermore, the "defamatory statement must be sufficiently public to create or threaten a stigma[.]" *Id.* (citing *Donato v. Plainview-Old Bethpage Cent. School Dist.*, 96 F.3d 623, 632-32 (2d Cir. 1996)). In addition, there "must be a specific and adverse action clearly restricting the plaintiff's liberty – for example, the loss of employment . . . or the 'termination or alteration of some other legal right or status . . . .'" *Id.* at 87-88 (internal quotation and citation omitted). Moreover, "injury to reputation by itself [is] not a 'liberty' interest

protected under the Fourteenth Amendment." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (quoting [*Paul v. Davis*,] 424 U.S. [693,] 708-709 [(1976)]). "Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Id.*

As noted above, despite Plaintiff's assertions to the contrary, Defendants neither terminated nor suspended him. Therefore, Plaintiff has failed to plead the "plus" element necessary to sustain a stigma-plus claim. Furthermore, although Plaintiff contends that Defendants' actions have damaged his future employment opportunities, he has not stated any facts to support that claim. In fact, he is still an employee of the District and has retained his position as Athletic Director since he returned from paid administrative leave. Thus, even drawing all inferences in a light most favorable to Plaintiff, the Court finds that he has not sufficiently alleged a deprivation of a constitutionally protected liberty interest. Accordingly, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's § 1983 deprivation of liberty claim.


**D.      Plaintiff's state-law claims**

As noted, Defendants did not move for summary judgment with regard to Plaintiff's state-law claims for defamation *per se* and injurious falsehoods. However, pursuant to 28 U.S.C. § 1367(c)(3), "the district courts may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if – . . . (3) the district court has dismissed all claims over which it has original jurisdiction, . . . ." 28 U.S.C. § 1367(c)(3). Although "[t]he exercise of supplemental jurisdiction is within the sound discretion of the district court[,]" *Lundy v. Catholic Health Servs. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013) (citation omitted), "[t]he court must 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness,

and comity in order to decide whether to exercise jurisdiction' over the . . . state law claims[,]"

*Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, *6 (E.D.N.Y. Oct. 23, 2014) (quotation and

other citation omitted). Generally, however, where a court has dismissed all of the federal claims

prior to trial, "the balance of factors will favor declining to exercise supplemental jurisdiction over

the remaining state law claims." *Id.* (citations omitted).

Having considered all of the relevant factors, the Court declines to exercise supplemental

jurisdiction over Plaintiff's state-law claims and dismisses those claims without prejudice pursuant

to 28 U.S.C. § 1367(c)(3).


## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable

law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment with regard to Plaintiff's § 1983

causes of action, *see* Dkt. No. 21, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's state-law claims for defamation *per se* and injurious falsehoods are

**DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c)(3); and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close

this case.

**IT IS SO ORDERED.**

Dated: May 14, 2019
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge